IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEYONTAE D. CURTIS,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.  24-2602 |
| | : | |
| **LEHIGH COUNTY DEPARTMENT** | : | |
| **OF CORRECTIONS,** *et al.* | : | |
| Defendants. | : | |

**MEMORANDUM**

**MURPHY, J.**                                                                                                           **July 18, 2024**

Plaintiff Keyontae D. Curtis, a prisoner currently incarcerated at the Lehigh County Jail ("LCJ"), commenced this *pro se* civil rights action by filing a Complaint pursuant to 42 U.S.C. § 1983.  (*See* DI 2.)  Mr. Curtis seeks to proceed *in forma pauperis*.  Because it appears that Mr. Curtis cannot afford to pre-pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*.  For the following reasons, the Court will dismiss his Complaint in part with prejudice and in part without prejudice.  Mr. Curtis will be granted leave to file an amended complaint as to his claims dismissed without prejudice, in the event he can cure the deficiencies noted by the Court.

**I.        FACTUAL ALLEGATIONS**

Mr. Curtis filed his Complaint, which he completed by using an old version of a standard complaint form to be used by a prisoner filing a civil action pursuant to 42 U.S.C. § 1983, naming the following Defendants: (1) the Lehigh County Department of Corrections and (2) Lieutenant Walty. (Compl. (DI 2) at 2.)[1]  Mr. Curtis's allegations are brief.  Mr. Curtis asserts

---

[1] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

that he was being escorted "to a suicide cell for [his] comments" after he had asked a correctional officer for the time and that officer refused to tell him the time. (Compl. at 5.) He asserts that there is "no clock on 3C and as a Muslim," he is "suppose[d] to pray 5 times a day." (*Id.*)

Mr. Curtis further avers that he was "strip search[ed] on 102" and was required to "bend all the way over after squatting and coughing three times." (*Id.*) He alleges that this search made him feel like "less then [sic] a man." (*Id.*) He contends that "mandatory anal searches were not permissible as applied to prisoners who are entering or leaving solitary confinement." (*Id.*) Mr. Curtis asserts that he "asked the jail for whoever was involved and they brush[ed] [him] off." (*Id.*)

As relief, Mr. Curtis requests that a clock be "put on 3C" and that "the LT [be] fired for what he did."[2] (*Id.*) Mr. Curtis also seeks monetary relief for emotional damages.[3] (*Id.*)

---

[2] To the extent Mr. Curtis seeks termination of employment, the Court has no authority to order such relief. *See Hall v. Carny*, No. 22-4094, 2023 WL 187569, at *1 (E.D. Pa. Jan. 13, 2023) (dismissing with prejudice the request that defendant be terminated from his employment); *Buskirk v. Pa. Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *1-2, 2 n.4 (E.D. Pa. Sept. 28, 2022) (construing plaintiff's request for the court to terminate the defendants' employment as seeking injunctive relief and holding that the court has no authority to terminate the employment of a state employee).

[3] Mr. Curtis alleges only emotional damages in his Complaint. "A prisoner may not bring a federal civil action for damages for mental or emotional injury suffered while in custody absent a showing of physical injury." *Tate v. Wiggins*, 805 F. App'x 159, 163 n.3 (3d Cir. 2020) (*per curiam*) (citing 42 U.S.C. § 1997e(e)). However, § 1997e(e)'s physical injury requirement does not affect a prisoner's ability to seek nominal or punitive damages for violations of his constitutional rights since "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (citing *Allah v. Al–Hafeez,* 226 F.3d 247, 252 (3d Cir. 2000)). Because Mr. Curtis has not alleged any physical injury from any of the alleged unconstitutional conduct, he is limited to seeking only nominal or punitive damages.

## II.     STANDARD OF REVIEW

The Court will grant Mr. Curtis leave to proceed *in forma pauperis* because it appears that he is incapable of pre-paying the fees to commence this civil action.[4]  Since Mr. Curtis is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted), *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Mr. Curtis is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "'pro se

---

[4] However, as Mr. Curtis is currently incarcerated, he will be obligated to pay the full amount of the filing fee in installments as required by the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

3

litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.*

### III. DISCUSSION

As noted above, the Complaint reflects Mr. Curtis's intention to raise constitutional claims under 42 U.S.C. § 1983 pursuant to the Court's federal question jurisdiction. Section 1983, the vehicle by which federal constitutional claims may be brought in federal court, "does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). For the following reasons, Mr. Curtis's claims are not plausible.

      A.      **Claims Against the Lehigh County Department of Corrections**

The Lehigh County Department of Corrections is not a proper defendant because it is merely a department of Lehigh County and not a separate legal entity subject to suit. *See Andino v. Hudson Cnty. Dep't of Corr. & Rehab.*, No. 22-5706, 2022 WL 16576492, at *2 (D.N.J. Nov. 1, 2022) ("A county department of corrections is not a legal entity separate from the county itself, and is not a proper defendant to a suit under 42 U.S.C. § 1983."); *Echevarria v. Essex Cnty. Dep't of Corr.*, No. 20-498, 2020 WL 831073, at *2 (D.N.J. Feb. 20, 2020) ("Neither a county jail nor a county department such as the Essex County Department of Corrections are 'persons' amenable to suit under § 1983."); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997). "Pennsylvania county offices . . . are treated as municipalities for purposes of *Monell*." *Hatfield v. Berube*, 714 F. App'x. 99, 102 n.1 (3d Cir. 2017) (citing *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013)).

Moreover, to the extent that a claim against the Lehigh County Department of Corrections can be understood to have been intended as a claim against Lehigh County, Mr. Curtis has not stated a plausible claim for municipal liability. To plead a basis for liability against a municipal entity under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can

be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Mr. Curtis has not alleged that any of the named Defendants or any specific individuals acted pursuant to a policy or custom established by Lehigh County, and, accordingly, he has not stated a plausible claim for municipal liability. The claims against the Lehigh County Department of Corrections will be dismissed with prejudice, but Mr. Curtis will be granted leave to file an amended complaint against Lehigh County if he can establish that the county maintained an unconstitutional custom or policy that caused an alleged constitutional violation.

### B. Personal Involvement

As noted above, a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable. *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207)). Mr. Curtis names Lieutenant Walty in area of the

form complaint where he was instructed to list the Defendants. (*See* Compl. at 2.) However, Mr. Curtis includes no specific facts about how Walty may be held liable for a constitutional claim. In other words, Mr. Curtis has not alleged what Walty did, or did not do, to violate his constitutional rights. Although there are references in Mr. Curtis's Complaint about what "he" did (*see* Compl. at 5), there is also a reference that Mr. Curtis had "asked the jail for whoever was involved," but was allegedly denied that information. (*Id.*) Accordingly, the Court is unable to discern whether the allegations concerning what "he" did correspond to the alleged actions of Walty or whether there were additional individuals involved in the alleged violation of Mr. Curtis's rights. Because there are no specific assertions as to what Walty did or did not do, any claims against Lieutenant Walty will be dismissed without prejudice. Although Mr. Curtis's failure to specify personal involvement is sufficient on its own to dismiss the Complaint, there are additional defects in his claims that support dismissal.

      **C.**     **Claims Based on Religion**

The Court understands Mr. Curtis to be asserting a First Amendment Free Exercise claim based on his allegation that that there is "no clock on 3C and as a Muslim," he is "suppose[d] to pray 5 times a day." (Compl. at 5.) The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). The threshold question in any First Amendment case is whether the prison's conduct "has substantially burdened the practice of the inmate-plaintiff's religion." *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (*per curiam*). Stated

another way, the free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted).

Mr. Curtis's sole allegation that there is "no clock on 3C" does not demonstrate that a substantial burden has been placed on his ability to exercise his religion. Moreover, the First Amendment only protects sincerely held religious beliefs, not "[t]he mere assertion" of a religious belief. *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). Mr. Curtis has not adequately alleged that practicing his religious beliefs has been burdened by the absence of a clock. Indeed, Mr. Curtis does not explain how the absence of a clock prevents him from exercising his faith.

Mr. Curtis's current allegations that he has been prevented from freely exercising his religion are conclusory, and the Complaint as pled does not sufficiently state a plausible First Amendment claim. *See Peele v. Klemm*, 663 F. App'x 127, 130 (3d Cir. 2016) (*per curiam*) (upholding dismissal of First Amendment claim where "Peele failed to provide any factual support for his First Amendment claims beyond general conclusory allegations that DC–819 was inimical to his and possibly other inmates First Amendment rights"); *Grohs v. Santiago*, No. 13-3877, 2014 WL 4657116, at *10 (D.N.J. Sept. 17, 2014) (dismissing free exercise claim where plaintiff "never identified his faith nor has he identified the sincerely held religious beliefs that required him to retain [certain religious] materials").

### D.     Fourth Amendment Claims

Although the Court is unclear as to who allegedly conducted the "strip search on 102," it appears that Mr. Curtis asserts that his Fourth Amendment rights were violated when he was

strip searched before being placed in a "suicide cell." (Compl. at 5.) Mr. Curtis's claims concerning this incident are conclusory and undeveloped.

In *Florence v. Board of Chosen Freeholders of the County of Burlington,* 566 U.S. 318, 223-339 (2012) the United States Supreme Court held that the Fourth Amendment to the United States Constitution does not bar correctional officers from conducting strip searches of detainees who will be admitted to a jail's general population. The Court found constitutional a prison policy of strip searching every inmate entering the general population, "regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history." *Id.* at 333-34. The Supreme Court found that this policy was reasonably related to the legitimate and substantial security interest of the correctional facility in preventing inmates from putting their own or others' lives at risk, either from disease, gang affiliation, or contraband. *Id.* at 333; *see also id.* at 328 ("[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."). The strip searches considered appropriate by the *Florence* Court included "close visual inspections while undressed," "directing detainees to shake their heads or to run their hands through their hair to dislodge what might be hidden there . . . instructions to raise arms, to display foot insteps, to expose the back of the ears, to move or spread the buttocks or genital areas, or to cough in a squatting position." *Id.* at 322, 324.

Even before the *Florence* decision, the United States Court of Appeals for the Third Circuit had held that prison officials could conduct visual body cavity searches whenever an inmate entered and exited his cell in a restricted housing unit, if performed in a reasonable manner. *See Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (*per curiam*) ("Assuming the truth of Millhouse's allegations, the searches, even if embarrassing and

humiliating, do not violate the constitution.") (citing *Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979). "When a prisoner moves through restricted areas of a correctional facility, it is not unreasonable for staff to check for contraband via visual body cavity searches upon the prisoner's return." *Jones v. Luzerne County Corr. Facility*, No. 10-359, 2010 WL 3338835, at *8 (M.D. Pa. 2010) (Vanaskie, J.) (citing *Millhouse*). Further, "[t]he Supreme Court has held that visual body cavity searches may be conducted by prison officials without probable cause," provided they are "conducted in a reasonable manner." *Brown v. Blaine*, 185 F. App'x 166, 169 (3d Cir. 2006) (*per curiam*) (citing *Bell*, 441 U.S. at 559-60); *see also Millhouse*, 373 F. App'x at 137.

In assessing the reasonableness of a search, courts should "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559; *Ibrahim v. DeFilippo*, No. 19-5021, 2021 WL 753898, at *12 (D.N.J. Feb. 26, 2021) ("In determining whether a particular strip search policy or action is reasonable, courts must balance an inmate's constitutional right to privacy and the needs of the institution to maintain safety and security."). Concerns about inmate possession of contraband are among the reasons that justify the use of strip searches in the prison context. *Bell*, 441 U.S. at 559. However, if a strip search is excessive, vindictive, or harassing, it may violate the Fourth Amendment. *See Pelino v. Gilmore*, No., 2020 WL 9264961, at *5 (W.D. Pa. Dec. 18, 2020), *R. & R. adopted*, 2021 WL 1037612 (W.D. Pa. Mar. 18, 2021) (quoting *Vo v. Gilmore*, No. 18-1364, 2019 WL 1507842, at *2 (W.D. Pa. Feb. 26, 2019)); *see also Parkell v. Danberg*, 833 F.3d 313, 328-29 (3d Cir. 2016). Mr. Curtis has failed to set forth any factual allegations that the strip search was unreasonable or conducted in an excessive, vindictive, or

harassing manner, so the Complaint as pled does not sufficiently state a plausible Fourth Amendment claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Mr. Curtis leave to proceed *in forma pauperis* and dismiss his Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Mr. Curtis's claims against the Lehigh County Department of Corrections will be dismissed with prejudice.  His remaining claims will be dismissed without prejudice, and Mr. Curtis will be granted the option of filing an amended complaint so that he can "flesh out [his] allegations by . . . explaining in the amended complaint the 'who, what, where, when and why' of [his] claim[s]." *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)).  Any amended complaint must clearly describe the factual basis for Mr. Curtis's claims against the relevant defendants and how each defendant was personally involved in the alleged denial of his constitutional rights.